| | |
|---|---|
| STATE OF MAINE<br>CUMBERLAND, ss. | SUPERIOR COURT<br>DOCKET NO. CV15-49 |

STATE OF MAINE
Cumberland, ss, Clerk's Office

FEB 12 2015

RECEIVED

VICKI MCKENNEY, individually; and )
VICKI MCKENNEY, as Next Friend of )
STEPHEN MCKENNEY, and as Personal )
Representative of THE ESTATE OF STEPHEN )
MCKENNEY, )
)
          Plaintiffs )    FIRST AMENDED COMPLAINT &
)    REQUEST FOR JURY TRIAL
v. )
)
NICHOLAS MANGINO; and )
CUMBERLAND COUNTY SHERIFF'S OFFICE, )
And WINDHAM POLICE DEPARTMENT )
)
          Defendants )

NOW COMES Plaintiffs Vicki McKenney, individually and as Next Friend, and as Personal Representative of the Estate of Stephen McKenney, by and through undersigned counsel, Daniel G. Lilley Law Offices, P.A., and complain and allege against the Defendants as follows:

## JURISDICTION AND PARTIES

1. Plaintiff Vicki McKenney is a citizen of the United States, who, at all times relevant to the instant action, resided at 2 Searsport Way, Town of Windham, County of Cumberland, and State of Maine.

2. Plaintiff Stephen McKenney died of a gunshot wound to the head on April 12, 2014, at the house where he resided, located at 2 Searsport Way, Town of Windham, County of Cumberland, and State of Maine.

3. Plaintiff Vicki McKenney is the spouse and Next Friend of the deceased Plaintiff Stephen McKenney.

4. Plaintiff Vicki McKenney is the Personal Representative of the Estate of Stephen McKenney.

5. Defendant Nicholas Mangino is and was a Deputy Sheriff employed by the Cumberland County Sheriff's Office at all relevant times concerning the facts in this lawsuit, and is, upon information and belief, a citizen of the United States, who resides at 9 Cornerbrook Circle, Town of Windham,

County of Cumberland, and State of Maine.

6. Defendant Cumberland County Sheriff's Office is a governmental department of the County of Cumberland, State of Maine.

7. Defendant Windham Police Department is a governmental department of the Town of Windham, State of Maine.

8. This Court has proper personal jurisdiction over the parties pursuant to general jurisdiction, 4 M.R.S.A. §105, the Maine Tort Claims Act 14 M.R.S.A. §8106, 18-A M.R.S.A. §2-804, and 42 U.S.C. §1983 and §12131.

9. Venue is proper pursuant to 14 M.R.S.A. §501

## FACTS

10. In the early morning on April 12, 2014, Plaintiff Vicki McKenney called 911 to request assistance because she was concerned about the safety of her husband, Plaintiff Stephen McKenney, 66 years old, who had been depressed and suffering from unremitting back pain for seven months.

11. Mrs. McKenney told the 911 operator that her husband, Mr. McKenney, needed help because he was suicidal.

12. Within minutes of Mrs. McKenney placing the 911 call, officers James Cook and Seth Fournier from the Windham Police Department and Cumberland County Deputy Sheriff Nicholas Mangino arrived separately at the McKenney residence.

13. During the course of the 911 call, Mrs. McKenney was asked by the 911 operator if Mr. McKenney had access to firearms and she confirmed that he did.

14. During the course of the 911 call, Mrs. McKenney was asked if Mr. McKenney had indicated the manner in which he might harm himself, and she confirmed that he had mentioned that he had considered getting in his truck and driving somewhere to shoot himself because he could not stand the pain he was in.

15. Some of the officers entered the residence through the garage, while Deputy Mangino was let into the residence by the officers through the front door.

16. Deputy Sheriff Mangino followed behind and Officer's Cook and Fournier and encountered Mr. McKenney as he emerged from a room into a hallway holding a lawfully owned .357 magnum handgun by his side.

17. After seeing Mr. McKenney walk into the hallway with a handgun at his side, the law enforcement officers left the residence without incident.

18. Deputy Mangino stated in a subsequent interview with the Maine Attorney General's Office ("AG") following the incident that he was surprised deadly force wasn't used at the first sight of Mr. McKenney holding a hand gun because his training told him that "action beats reaction."

19. As the officers were leaving the residence, Deputy Mangino stated that he was going to his vehicle to access his long gun.

20. After leaving the residence, Mrs. McKenney, who had been waiting in the garage as the officers entered the residence, was escorted to Officer Fournier's cruiser and then driven out of the driveway and down the cul-de-sac away from the residence.

21. Inside Deputy Mangino's SUV was Zachary Welch, a 23 year old civilian friend who was riding along with Deputy Mangino.

22. At the time Mrs. McKenney was driven out of the driveway and away from the residence, Deputy Mangino had already gone into his SUV and accessed a rifle and was standing by the driver's side of his vehicle holding the rifle.

23. During his interview with the Maine AG, Deputy Mangino stated that when he returned to his vehicle he told Mr. Welch that "the guy's got a gun" and after retrieving his rifle he stood in front of his vehicle for about a minute.

24. Prior to Mr. McKenney emerging from his home, Deputy Mangino had time and yet failed to take any appropriate action to protect Mr. Welch, the civilian in his SUV, by having him placed into the

cruiser with Mrs. McKenney that was departing the residence,

25. At no time did Deputy Magino make any effort to move his police cruiser to a more secure location away from the end of the McKenny driveway.

26. After Mrs. McKenney had been driven away from the residence, Mr. McKenney emerged from the house, walking in and out of the garage and into his driveway while holding his gun.

27. All the officers wore body microphones which transmitted transmissions to the Watchguard recording system in their separate cruisers, one of which remained in the driveway after Officer Fournier drove Mrs. McKenney away from the residence, and continued to record video from the cruiser as well.

28. Watchguard audio recorded three verbal commands asking Mr. McKenney to disarm.

29. During the interview with the Maine AG, Deputy Mangino described Mr. McKenney as having a very vacant stare, appearing very odd, as if he was "someone who is not home mentally."

30. After surveying the scene in his driveway, Mr. McKenney returned into his garage where he remained for over five minutes.

31. No effort was made during this time to de-escalate the situation or to attempt to communicate with Mr. McKenney

32. Mrs. McKenney had requested that she be allowed to call Mr. McKenney earlier but was denied that request by the law enforcement officers.

33. Mr. McKenney re-emerged from the garage and walked into the driveway, holding his gun to his side.

34. The WatchGuard audio and video recording systems recorded no verbal commands or warnings or conversations of any kind given to Mr. McKenney as he was walking in his driveway with his gun to his side.

35. During the interview with the Maine AG, Deputy Mangino described Mr. McKenney as "walking nonchalantly; observed a firearm in right hand, by his leg, just dangling."

36. As Mr. McKenney was walking down his driveway looking around with his hand gun to his side, making no threats or threatening movements, without warning, provocation, and without making any attempt to communicate with him or de-escalate the situation, Deputy Mangino unilaterally opened fire with his rifle aimed at Mr. McKenney, firing two shots, the first striking the dirt beside the driveway and the second striking Mr. McKenney in the head, killing him.

37. Based upon the 911 call by Mrs. McKenney, defendants knew that Mr. McKenney was feeling hopeless as a result of the unremitting pain he was suffering due to a back injury.

38. Based upon the 911 call by Mrs. McKenney, defendants knew that Mr. McKenney was suicidal.

39. Based upon the 911 call by Mrs. McKenney, defendants knew Mrs. McKenney had called asking for assistance to take Mr. McKenney to the hospital.

40. Based upon the 911 call and observations of Mrs. McKenney when they arrived at the scene, defendants knew Mrs. McKenney was not, and did not feel, physically threatened by Mr. McKenney.

41. Based upon the 911 call by Mrs. McKenney, defendants knew Mr. McKenney was not threatening harm to anyone other than himself.

42. Mr. McKenney made no threats of violence and presented no threat to defendants either while inside his residence or outside on his driveway.

43. The actions of the individual defendants were intentional and inspired by malice: to wit, a reckless disregard for the rights of Mr. and Mrs. McKenney.

44. Defendants failed to follow any procedure or protocol for appropriately dealing with a suicidal individual once it received a 911 call reporting Mr. McKenney was suicidal.

45. Defendants, despite being aware from the 911 call that Mr. McKenney had access to a handgun, immediately responded to the situation by treating it as a criminal stand-off; by barricading him and surrounding the house with armed law enforcement officers with guns trained on him, in contradiction of all training which states that attempts should be made to deescalate the situation first.

46. Defendants failed to have a policy in place, or follow policy or protocol, as to determining who was in charge of the scene as between different law enforcement agencies, and failed to implement a clear line of authority at the scene which unnecessarily led to the situation escalating to an armed confrontation.

47. Defendants acted unreasonably upon seeing Mr. McKenney merely holding a lawfully owned and registered handgun to his side in his home and on his own private property, needlessly escalating the situation without justification contrary to policy or protocol in response to a 911 call concerning a suicidal individual.

48. Defendants knew, or should have known, that its actions could result in needlessly, and unreasonably, provoking a response from Mr. McKenney, contrary to standard policy, protocols, or known tactics for dealing with armed suicidal subjects.

49. Defendants failed to have a policy, protocol, or procedure for making a plan for responding to an armed suicidal subject at the scene.

50. Defendants failed to act reasonably in following standard police or municipal policies, protocol, or procedures for responding to an armed suicidal subject at the scene.

51. Defendants acted unreasonably in failing to consider any less-lethal alternatives or approaches to responding to or dealing with an armed suicidal subject at the scene.

52. Defendants acted unreasonably by failing to make any attempt to converse or communicate with Mr. McKenney and de-escalating the situation.

53. Defendants knew, or should have known, that the use of deadly force when dealing with a suicidal individual is considered by law enforcement policy, protocol, and procedures to be the option of last resort and used only after all other options have been exhausted.

## COUNT I: VIOLATION OF FOURTH AMENDMENT OF U.S CONSTITUTION §1983

54. Plaintiffs repeat and reassert each and every allegation of paragraphs 1 through 53 as if fully set forth

herein.

55. The Fourth Amendment of the United States Constitution protects citizens against the use of excessive force by police officers by guaranteeing that all people shall "be secure in their person . . . against unreasonable seizures."

56. Title 42 U.S.C. §1983 provides for a cause of action against any person who, acting under color of law, deprives an individual of any rights, privileges, or immunities secured by the Constitution and laws of the United States.

57. The right of citizens to be free from the use of excessive force by police officers is an established right.

58. Defendants Mangino, the Cumberland County Sheriff's Office, and the Windham Police Department are cognizant of this right.

59. By virtue of the foregoing, the conduct of defendants was such that they were acting under color of law.

60. By virtue of the foregoing, the conduct of the defendants violated Plaintiffs' rights as established by the Fourth Amendment to the United States Constitution.

61. Defendants' actions in using excessive force exceeded the scope of their discretion.

62. Defendants' use of excessive force when Mr. McKenney posed no immediate threat to the safety of the officers or others shocks the conscience.

63. The actions of the individual defendants were intentional and inspired by malice: to wit, a reckless disregard for the rights of Mr. McKenney.

64. As a result of defendants' violations of plaintiffs' constitutional rights, plaintiffs have suffered physical injury, pecuniary losses, emotional distress, and other damages, both compensatory and punitive, for which they seek compensation.

## COUNT II: VIOLATION OF MAINE CIVIL RIGHTS ACT

65. Plaintiffs repeat and reassert each and every allegation of paragraphs 1 through 64 as if fully set forth herein.

66. By virtue of the foregoing, the conduct of defendants violated plaintiffs' rights as established by the Fourth Amendment to the United States Constitution.

67. By virtue of the foregoing, the conduct of defendants violated plaintiffs' right to be free from the use of excessive force by police officers as established by Article I, Section 5 of the Maine Constitution.

68. Defendants intentionally interfered with plaintiffs' rights under the Maine and United States Constitutions by use of physical force and violence against them.

69. As a proximate result of the violation of plaintiffs' constitutional rights, plaintiffs have suffered pecuniary losses, emotional distress, physical injury, and other damages, both compensatory and punitive, for which they seek compensation.

## COUNT III: - VIOLATION OF FOURTEENTH AMENDMENT OF U.S CONSTITUTION §1983

70. Plaintiffs repeat and reassert each and every allegation of paragraphs 1 through 69 as if fully set forth herein.

71. The Fourteenth Amendment of the United States Constitution protects citizens against excessive force that constitutes deprivation of liberty without the due process of law.

72. Title 42 U.S.C. §1983 provides for a cause of action against any person who, acting under color of law, deprives an individual of any rights, privileges, or immunities secured by the Constitution and laws of the United States.

73. Defendants owed Plaintiff Stephen McKenney a duty of protection, including adequate suicide prevention procedures, after he was involuntarily confined on his premises.

74. Plaintiff Stephen McKenney was involuntarily in the functional custody of the Defendants who had barricaded him on his property and surrounded his residence with armed law enforcement officers

who had their weapons drawn upon him.

75. Defendants breached their duty to protect by failing to exercise reasonable care, including but not limited to, failure to follow protocol in dealing with a person in a mental health crisis, failure to operate a safe premises within which it had confined Mr. McKenney, failure to establish clear lines of authority and supervision of the scene, failure to adequately or reasonably attempt to communicate with Mr. McKenney, and failure to protect Mr. McKenney from the threat and use of excessive force.

76. Defendants acted recklessly or with callous disregard or deliberate indifference, in failing to take adequate steps to protect Mr. McKenney while he was in the functional custody of defendants, by failing to adequately or reasonably attempt to communicate with Mr. McKenney, failing to follow protocol in dealing with a person in a mental health crisis, failing to establish any lines of authority or supervision at the scene, and failing to protect Mr. McKenney from the threat and use of excessive force.

77. Defendants were in control of the scene at the time of the incident.

78. Defendants created or increased the danger to which Mr. McKenney was exposed.

79. Defendants owed Mr. McKenney a duty to protect him from the harm they created.

80. Defendants' use of excessive force and failure to protect Mr. McKenney when he posed no immediate threat to the safety of the officers or others shocks the conscience.

81. Defendants acted with malice and the intent to harm Mr. McKenney physically.

82. As a proximate result of the breach of duties owed by defendants to plaintiffs, plaintiffs have suffered pecuniary losses, emotional distress, physical injury, and other damages, both compensatory and punitive, for which they seek compensation.

## COUNT IV: NEGLIGENCE - FAILURE TO PROTECT

83. Plaintiffs repeat and reassert each and every allegation of paragraphs 1 through 82 as if fully set forth herein.

84. Defendants owed Plaintiff Stephen McKenney a duty of protection, including adequate suicide prevention procedures, after confining him on his premises.

85. Defendants breached this duty by failing to exercise reasonable care, including but not limited to, failure to follow protocol in dealing with a person in a mental health crisis, failure to operate a safe premise within which it had confined Mr. McKenney, failure to adequately or reasonably attempt to communicate with Mr. McKenney, and failure to protect Mr. McKenney from the threat and use of excessive force.

86. Defendants acted recklessly or with callous disregard or deliberate indifference, in failing to take adequate steps to protect Mr. McKenney while confining him on his premises, in failing to adequately or reasonably attempt to communicate with Mr. McKenney, and failing to protect Mr. McKenney from the threat and use of excessive force.

87. Defendants were in control of the scene at the time of the incident.

88. Defendants observed the risk and use of excessive force.

89. Defendants had a realistic opportunity to prevent the use of excessive force.

90. Defendants had enough time to prevent the use of excessive force.

91. Defendants owed Mr. McKenney a duty to protect him from the harm they created.

92. Defendants' use of excessive force when Mr. McKenney posed no immediate threat to the safety of the officers or others shocks the conscience.

93. As a proximate result of the breach of duties owed by defendants to plaintiffs, plaintiffs have suffered pecuniary losses, emotional distress, physical injury, and other damages, both compensatory and punitive, for which they seek compensation.

## COUNT V: VIOLATION OF FOURTH AMENDMENT OF U.S. CONSTITUTION – §1983 - FAILURE TO TRAIN POLICE OFFICERS

94. Plaintiffs repeat and reassert each and every allegation of paragraphs 1 through 93 as if fully set

forth herein.

95. Defendant municipalities have a duty to protect the rights of the inhabitants that its law enforcement officers come into contact with.

96. Defendant municipalities' law enforcement officers and first responders respond to a significant number of calls that involve individuals experiencing a mental health crisis or are at risk for suicide.

97. Defendant municipalities' law enforcement officers are often called to determine if and when an individual should be referred to treatment or taken into protective custody.

98. Defendant municipalities' jails hold increasingly more individuals with mental health issues as a result of being taken into custody.

99. Defendant municipalities' failure to train their law enforcement officers on how to deal with, interact, and protect persons who are suicidal and/or are experiencing a mental health crisis are deliberate and/or conscious choices evidencing a municipal policy.

100. The need for more, or different training on how to deal with, interact, and protect persons who are suicidal and/or are experiencing a mental health crisis is obvious and the inadequacy of the training is so likely to result in a violation of constitutional rights that the municipalities were deliberately indifferent to the need for more or different training.

101. Defendant municipalities' deficient training led to the law enforcement officers on the scene failing to protect the constitutional rights of Plaintiffs.

102. Defendant municipalities have failed to train its employees to protect the constitutional rights of suicidal and/or mentally ill individuals despite being aware of a pattern of its employees using excessive force in dealing with such persons.

103. Defendant municipalities' failure to implement and maintain an independent and working internal affairs department to monitor police abuses and discipline or otherwise punish employees for the use excessive force against suicidal and/or mentally ill citizens is a widespread practice that is so permanent and well-settled as to constitute a custom or usage with the force of law.

104.  As a proximate result of the breach of duties owed by municipal defendants to plaintiffs, plaintiffs have suffered pecuniary losses, emotional distress, physical injury, and other damages, both compensatory and punitive, for which they seek compensation.

## COUNT VI: VIOLATION OF 42 U.S.C. § 12131 AMERICANS WITH DISABILITIES ACT

105.  Plaintiffs repeat and reassert each and every allegation of paragraphs 1 through 104 as if fully set forth herein.

106.  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

107.  Plaintiff Stephen McKenney was a qualified individual with a disability due to a severe physical impairment, suffering from a severe back injury which substantially limited him in one or more major life activities, including sleeping, walking, bending, lifting, concentrating, thinking, and/or caring for oneself.

108.  Plaintiff Stephen McKenney was a qualified individual with a disability due to a severe mental impairment, suffering from depression and/or suicidal ideation which substantially limited him in one or more major life activities, including sleeping, concentrating, and/or caring for oneself.

109.  Plaintiff Stephen McKenney was discriminated against by defendants in violation of the ADA because he was regarded as a qualified individual with a disability due to an impairment.

110.  Plaintiff Stephen McKenney was denied proper police protection and fair treatment by the defendants.

111.  Plaintiff Stephen McKenney was excluded from participation in, and/or denied the benefits of the services, programs, or activities of the defendants, which are available to individuals suffering from physical or mental health disabilities or crises.

112.  Plaintiff Stephen McKenney was denied said protection and fair treatment due to his physical

and mental disabilities, or because he was regarded as a qualified individual with a disability

113. As a proximate result of the violation of plaintiffs' rights under the ADA, Plaintiffs have suffered pecuniary losses, emotional distress, physical injury, and other damages, both compensatory and punitive, for which they seek compensation.

## COUNT VII: ASSAULT

114. Plaintiffs repeat and reassert each and every allegation of paragraphs 1 through 113 as if fully set forth herein.

115. Defendants knew Mr. McKenney was dealing with mental health crisis when they responded to the 911 call from Mrs. McKenney asking for someone to help him.

116. Defendants' response to the 911 call with a display of force was intended to cause Mr. McKenney to feel an apprehension of an imminent harmful or offensive contact.

117. Defendants responded to the 911 call by, among other displays of force, entering his household armed, taking control of the premises and surrounding it with officers who had their firearms drawn, making no attempt to use any non-aggressive or non-confrontational communications, failing to follow protocols or training on dealing with mentally ill individuals, and firing shots at him.

118. Mr. McKenney was, in fact, put into apprehension of an imminent harmful or offensive contact.

119. As a proximate result of Defendants' assault on Mr. McKenney, Mr. McKenney suffered pecuniary losses, emotional distress, and other damages, both compensatory and punitive, for which Plaintiffs seek compensation.

## COUNT VIII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

120. Plaintiffs repeat and reassert each and every allegation of paragraphs 1 through 119 as if fully

set forth herein.

121. Plaintiff Vickie McKenney called 911 for assistance to help her mentally ill and suicidal husband.

122. Defendants failed to follow protocol and training, and intentionally and recklessly escalated the situation such that it was certain, or substantially certain, that emotional distress to Plaintiffs would result from such conduct.

123. The conduct of the defendants in needlessly and recklessly escalating the situation to an armed confrontation, failing to follow protocol and training, placing Mrs. McKenney in a situation where she was forced to observe and listen to the events as they unfolded, and shooting twice and killing Mr. McKenney as he was walking down the driveway, without making any attempts to negotiate or defuse the situation, and then leaving Mr. McKenney's body uncovered and in the open for all to see for hours afterwards, was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community.

124. It was the actions of the Defendants after they arrived at the McKenney residence that created the danger and caused Plaintiff's emotional distress.

125. The emotional distress Plaintiff's suffered while listening to and watching Defendants' actions, including firing two shots at and killing Mr. McKenney while he posed no threat and was making no threatening actions or movements, was so severe that no reasonable person could be expected to endure it.

126. As a proximate result of Defendants' Intentional Infliction of Emotional Distress, Plaintiffs suffered pecuniary losses, emotional distress, and other damages, both compensatory and punitive, for which she seeks compensation.

## COUNT IX: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

127. Plaintiffs repeat and reassert each and every allegation of paragraphs 1 through 126 as if fully

set forth herein.

128. Defendants owed Plaintiffs a duty of protection and assistance once they arrived on the scene and took such actions so as to control the premises and once they placed Mrs. McKenney in a law enforcement vehicle and drove her away from residence.

129. Defendants breached their duties by negligently escalating the situation to an armed confrontation, failing to follow protocol and training, placing Mrs. McKenney in a situation where she was a bystander and forced to observe and listen to the events as they unfolded, and displayed an indifference to the safety of Mr. McKenney in shooting at him twice and killing him as he was walking down the driveway, without making any attempts to negotiate or defuse the situation, and then leaving Mr. McKenney's body uncovered and in the open for all to see for hours afterwards.

130. By placing Mrs. McKenney in a law enforcement vehicle and driving her to a location whereby she could witness the events as they unfolded, she was a bystander to the actions of the police and was foreseeably harmed by witnessing the actions of the police, including the unprovoked shooting of Mr. McKenney and his body being left out in the open afterwards.

131. By placing Mrs. McKenney, the wife of Mr. McKenney, in a law enforcement vehicle and driving her to a location whereby she could witness the events as they unfolded, a special relationship was formed whereby Defendants had a duty to protect her from foreseeable harm in witnessing the actions of the police, including the unprovoked shooting of Mr. McKenney and his body being left out in the open afterwards.

132. The Defendants' breaches of their duties created the danger and caused serious mental harm to Plaintiff Mrs. McKenney in witnessing the actions and danger posed by Defendants.

133. As a direct and proximate result of Defendants' Negligent Infliction of Emotional Distress, Plaintiffs suffered pecuniary losses, emotional distress, and other damages, both compensatory and punitive, for which she seeks compensation.

## X. WRONGFUL DEATH - 18-A M.R.S.A. §2-804

134. Plaintiffs repeat and reassert each and every allegation of paragraphs 1 through 133 as if fully set forth herein.

135. Defendants' wrongful acts and/or negligence caused the death of Mr. McKenney.

136. Mr. McKenney's death would have not ensued had not the Defendants acted wrongfully and/or negligently.

137. As a direct and proximate result of Defendants wrongful and/or negligent acts, Plaintiffs suffered medical and funeral expenses, loss of comfort, society and companionship of the deceased, and emotional distress and other damages, both compensatory and punitive, for which they seek compensation.

## JURY TRIAL REQUEST

138. Plaintiffs request a trial by jury.

**WHEREFORE** Plaintiffs pray for judgment on each and every count in an amount that reasonably compensates them for all damages, together with punitive damages, interest, costs, and an award of reasonable attorney fees and other litigation costs incurred in bringing this action pursuant to 42 U.S.C § 1983 and §12131 and/or 5 M.R.S.A. §4683, to the highest extent allowable by law, from the earliest date allowable by law, and grant such further relief as the Court may deem just and proper.

DATED at Portland, Maine, this ___ day of February, 2015.

Daniel G. Lilley, Esq., Bar No. 1870
Andrew T. Mason, Esq., Bar No. 10064

Attorneys for Plaintiffs
DANIEL G. LILLEY LAW OFFICES, P.A.
39 Portland Pier
P.O. Box 4803
Portland, ME 04112-4803
(207) 774-6206